**UNITED STATES BANKRUPTCY COURT**
<u>SOUTHERN DISTRICT OF NEW YORK</u>

|  |  |
|---|---|
| In re: | **FOR PUBLICATION** |
| NOSSON SKLAR, | Chapter 7 |
| Debtor. | Case No. 19-11740 (MG) |
| DULCE GARCIA, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 20-01318 (MG) |
| NOSSON SKLAR, | |
| Defendant. | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING RELIEF FROM THE
AUTOMATIC STAY AND OTHER RELIEF**</u>

*A P P E A R A N C E S :*

DEREK SMITH LAW GROUP, PLLC
*Attorneys for the Plaintiff*
One Penn Plaza
Suite 4905
New York, New York 10119
By:    Alexander Gabriel Cabeceiras, Esq.

LAW OFFICES OF NARISSA A. JOSEPH
*Attorneys for the Defendant*
305 Broadway
Suite 1001
New York, New York 10007
By:    Narissa A. Joseph, Esq.

# Table of Contents

I.    THE PENDING MOTIONS AND ADVERSARY PROCEEDING ................................................5

II.    BACKGROUND ................................................................................................................7

   A.    THE DEBTOR'S BANKRUPTCY CASES AND THE DISTRICT COURT ACTION ....................7

   B.    THE ADVERSARY PROCEEDING ....................................................................................10

   C.    CURRENT STATUS ........................................................................................................11

III.    LEGAL STANDARD ......................................................................................................13

   A.    THE AUTOMATIC STAY ................................................................................................13

   B.    RELIEF FROM THE STAY ..............................................................................................14

   C.    RETROACTIVE RELIEF FROM THE STAY ......................................................................15

IV.    DISCUSSION ................................................................................................................17

   A.    THE EFFECT OF THE STAY ON THE DISTRICT COURT ACTION ....................................17

   B.    RETROACTIVE RELIEF FROM THE STAY ......................................................................18

   C.    RELIEF FROM THE STAY TO RESTART THE DISTRICT COURT ACTION..........................23

   D.    EXCEPTIONS TO AND DENIAL OF DISCHARGE..............................................................24

      1.    *Applicable Grounds for Objecting to Discharge*........................................25

      2.    *Time Limitations and Dischargeability* ......................................................26

      3.    *Time Limitations for Dischargeability Complaints in a Converted Case*................30

      4.    *Lack of Notice or Actual Knowledge* ..........................................................32

      5.    *Leave to Amend* ..........................................................................................36

      6.    *The Motion Objecting to Discharge* ............................................................36

   E.    CONSENT TO ADJUDICATION IN THE BANKRUPTCY COURT..........................................37

V.    CONCLUSION................................................................................................................38

APPENDIX: TIMELINE ....................................................................................................... A-1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This opinion addresses issues stemming from a procedural imbroglio from the filing of a complaint in the district court on November 16, 2017 by Dulce Garcia ("Garcia" or the "Plaintiff") against the debtor-defendant in this case, Nosson Sklar ("Sklar," the "Defendant," or the "Debtor") while his earlier chapter 11 bankruptcy case was pending in this Court.[1]  The complaint asserted claims for employment discrimination, sexual harassment, assault and battery, and gender-motivated violence.  The Defendants did not respond to the complaint, so on March 24, 2020, Garcia obtained a default judgment against the Defendants, including Sklar, in the amount of $284,785.01, which included damages for economic losses, emotional distress, punitive damages, attorneys' fees and costs, all of which were assessed jointly and severally against all Defendants.

On November 13, 2020, Garcia filed a denial of discharge adversary complaint against Sklar in this chapter 7 case.  Due to Garcia's potential lack of notice or actual knowledge of Sklar's bankruptcy case, the claims on which Garcia obtained her judgment might very well be non-dischargeable.  But Garcia's complaint in the district court was filed, and the district judge entered a default judgment on liability, during Sklar's <u>first</u> bankruptcy case, which was filed on August 29, 2017 and dismissed on October 31, 2018.  And, then, the magistrate judge conducted a damages inquest and issued a report and recommendation on the amount of damages, and the

---

[1]     The complaint also named as defendants five business entities that Sklar managed, owned, and operated (collectively, the "Defendants").  The business entities named in the complaint are Comprehensive Center, LLC; Comprehensive Staffing Solutions, LLC; Grand Street Medicine & Rehabilitation, P.C.; Comprehensive Evaluation Services, PT, OT, SLP, LMSW, Psychology, PLLC; and New York's Comprehensive Home Care Services, LLC. The complaint also named Victor Robbins, the acting human resources representative for the Debtor's business entities.  Robbins was dismissed as a defendant for failure to prosecute.

Comprehensive Center LLC filed a chapter 11 petition on May 15, 2019.  ("Comprehensive Center Petition," Case No. 19-11558 (MG), ECF Doc. # 1.)  That case was dismissed by order dated March 23, 2020. ("Comprehensive Center Dismissal," Case No. 19-11558, ECF Doc. # 23.)  The Court does not address any issues concerning the judgment against Comprehensive Center LLC.

district judge adopted the report and recommendation and entered judgment against Sklar, all during Sklar's <u>second</u> bankruptcy case, which was filed on May 29, 2019 and remains pending.[2] The second bankruptcy petition and schedules (as originally filed) do not disclose Garcia's claim, the filing of her district court lawsuit, or the default judgment entered by the district court. *One thing is crystal clear and bears emphasis—neither the district judge nor the magistrate judge knew or had any reason to know about Sklar's first or second bankruptcy cases.* Sklar did not appear in the district court case; and Garcia's lawyer asserts that neither he nor Garcia knew about Sklar's first or second bankruptcy cases, a factual assertion that may need to be tested in the adversary proceeding. The usual rule is that, as a result of the automatic stay, the filing of Garcia's district court lawsuit, and any rulings by the district court, while the automatic stay is in place, are void.

Garcia's lawyer argues, despite the procedural irregularities, the district court judgment against Sklar should be enforced, and Sklar should be denied a discharge (or at least Garcia's claim should be excepted from discharge). Sklar's lawyer never filed anything regarding the effect of the stay on Garcia's lawsuit, and never filed an objection to the motion to lift the stay. Sklar's lawyer did, however, file briefs regarding the timeliness of Garcia's denial of discharge complaint and the effect of 28 U.S.C. § 157(b)(5). Other important issues are either poorly addressed or not addressed at all by the parties.

The Court now considers the following questions: (1) whether the judgment against Sklar is void; (2) whether to lift the automatic stay, either retroactively to validate the judgment, or prospectively to permit Garcia to return to the district court to file a new action against Sklar; (3)

---

[2]    Due to the significance of certain dates to the issues addressed in this opinion, a timeline is included as an appendix.

whether Garcia had notice or actual knowledge of Sklar's bankruptcy; (4) whether Garcia's claims against Sklar that were asserted in the district court complaint can be adjudicated by this Court as part of the claims-allowance process or must be tried in the district court under 28 U.S.C. § 157(b)(5); and (5) whether any of the claims asserted in the denial of discharge adversary complaint should be dismissed.

For the reasons explained below, the Court concludes as follows: (1) all of the proceedings and rulings in Garcia's district court case are void against Sklar; (2) the automatic stay will be lifted to permit Garcia to start over again in the district court; (3) further proceedings in this Court are required to determine when Garcia had notice or actual knowledge of Sklar's bankruptcy; (4) because Garcia's claims against Sklar include personal injury claims, and neither party has consented to adjudication of the claims in this Court, section 157(b)(5) requires that Garcia's non-bankruptcy law claims be tried in the district court; and (5) all of the claims asserted in the denial of discharge adversary complaint must be dismissed—specifically, the claims asserted under sections 523(a)(11), 523(a)(19)(B)(i)–(iii), and 1328(f) are dismissed as inapplicable to this chapter 7 case, and the claims under sections 523(a)(6) and 727(a)(4)(A) are dismissed as untimely.  However, Garcia is granted leave to amend the Adversary Proceeding to assert a claim for an exception to discharge under section 523(a)(3).

## I.    THE PENDING MOTIONS AND ADVERSARY PROCEEDING

Pending before the Court is the Amended Motion for Relief from the Automatic Stay Pursuant to Section 362(d)(1) filed on November 23, 2020 (the "Lift-Stay Motion," Main Case ECF Doc. # 85-1)[3] filed on behalf of Garcia.  The Lift-Stay Motion seeks to lift the stay of the

---

[3]    The original lift-stay motion was filed earlier the same day at Main Case ECF Doc. # 84.

"District Court Action"[4] filed in the United States District Court for the Southern District of New York (the "District Court") on November 16, 2017, including claims for employment discrimination, sexual harassment, assault and battery, and gender-motivated violence against Sklar and five business entities he managed, owned, and operated.  ("District Court Complaint," Main Case ECF Doc. # 85-3.)

In her adversary proceeding (the "Adversary Proceeding," Adv. Proc. 20-01318), Garcia seeks an exception to discharge for the damages claim arising from a default judgment she obtained against Sklar in the District Court Action, and a total denial of Sklar's discharge due to the nondisclosure of that lawsuit in his petition and schedules.[5]  Garcia also filed a motion objecting to discharge on November 6, 2020 in the Main Case.  ("Motion Objecting to Discharge," Main Case ECF Doc. # 81.)

The deadline for responses to the Lift-Stay Motion was December 1, 2020.  (Main Case ECF Doc. # 85.)  On December 1, 2020, the chapter 7 trustee filed a statement of no objection to the Lift-Stay Motion.  (Main Case ECF Doc. # 87.)  There have been no other responses to the Lift-Stay Motion.

In the Adversary Proceeding, Sklar's lawyer filed a brief objecting to the timeliness of Garcia's adversary complaint objecting to discharge ("Defendant's Brief," AP ECF Doc. # 10), and a supplemental brief refusing consent to this Court determining Garcia's claims as part of the claims-allowance process. ("Defendant's Supplemental Brief," AP ECF Doc. # 13.)  Garcia filed

---

[4]     *Dulce Garcia v. The Comprehensive Center, LLC, et al.*, 17-cv-8970 (JPO).

[5]     Docket entries from the main case will be cited as "Main Case ECF Doc. # __."  Docket entries from the Adversary Proceeding will be cited as "AP ECF Doc. # __."

a brief in further support of relief from the stay[6] and in further support of a finding that Garcia's claims are non-dischargeable. ("Plaintiff's Brief," AP ECF Doc. # 13.) The Plaintiff's Brief did not address any timeliness issues.

No responses have been filed to the Motion Objecting to Discharge.

The Court has held multiple hearings and conferences in the Main Case and the Adversary Proceeding and has encouraged the parties to reach a consensual resolution. However, settlement discussions have proven unsuccessful. Therefore, this opinion addresses the issues that need to be resolved to move the Main Case and the Adversary Proceeding forward.

## II.    BACKGROUND

### A.  The Debtor's Bankruptcy Cases and the District Court Action

On August 29, 2017 (the "First Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ("First Petition," Case No. 17-12394, ECF Doc. # 1.) That chapter 11 case (the "First Bankruptcy Case") was dismissed on October 31, 2018. The dismissal order stated:

> Debtor ha[d] failed to prosecute this chapter 11 case for a prolonged period of time, to appear at his adjourned meeting of creditors, to pay any fees to the United States Trustee or to file any operating reports since the commencement of the case, and ha[d] failed to deliver basic documents reasonably requested by the United States Trustee.

("Dismissal Order," Case No. 17-12394, ECF Doc. # 47.)

On May 29, 2019 (the "Second Petition Date"), the Debtor filed a second voluntary petition for relief under chapter 11 of the Bankruptcy Code. ("Second Petition," Main Case ECF

---

[6]    Among the many procedural irregularities of this case is that several arguments for lifting the stay have been asserted in the Adversary Proceeding. However, Plaintiff's counsel did correctly file the Lift-Stay Motion in the Main Case.

Doc. # 1.) On August 27, 2019, this case (the "Second Bankruptcy Case") was converted to one under chapter 7. ("Order Converting Case," Main Case ECF Doc. # 36.) Deborah J. Piazza (the "Trustee") was appointed chapter 7 trustee, and she continues to serve in that capacity. ("Notice of Appointment," Main Case ECF Doc. # 37.)

On November 16, 2017, Garcia filed the District Court Complaint. The District Court Complaint and several documents from the District Court Action are attached to the Lift-Stay Motion, including:

- Opinion and Order Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment (the "Default Judgment Opinion," Main Case ECF Doc. # 85-4);

- Order Clarifying Defendants' Liability (the "Liability Order," Main Case ECF Doc. # 85-5);

- Report and Recommendation on Damages to the Hon. J. Paul Oetken (the "R&R," Main Case ECF Doc. # 85-6); and

- Order Adopting Report and Recommendation (the "Order Adopting R&R," Main Case ECF Doc. # 85-7).

All events giving rise to the District Court Complaint took place before the First Petition Date. (*See* District Court Complaint ¶¶ 14–36.) None of the Defendants filed an answer or otherwise appeared in the District Court Action. (Default Judgment Opinion at 1.) On August 16, 2018, United States District Judge J. Paul Oetken granted in part and denied in part the Plaintiff's motion for default judgment, and he referred the matter to United States Magistrate Judge Barbara C. Moses for an inquest on damages.[7] (*Id.* at 11.) On August 22, 2018, Judge Oetken issued an order clarifying the Defendants' liability, as follows:

> This Court now clarifies that all [Defendants] are jointly and severally liable as to Plaintiff's race- and gender-discrimination claims under 42 U.S.C. § 1981; the New York State Human Rights

---

[7]    The Plaintiff moved for default judgment against all of the Defendants except Robbins.

Law, N.Y. Exec. Law § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* (Fifth, Seventh, Eighth, Eleventh, Twelfth, and Fifteenth Causes of Action), and as to Plaintiff's claim of interference with a protected right under municipal law, *see* N.Y.C. Admin. Code § 8-107(19) (Tenth Cause of Action). All [Defendants] except Sklar are jointly and severally liable as to Plaintiff's race- and gender-discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (First Cause of Action), which were asserted against the corporate defendants only. (Compl. ¶¶ 48–51.) Finally, Sklar alone is liable as to Plaintiff's claims of assault and battery (Thirteenth Cause of Action).

(Liability Order.)

On November 21, 2019, Magistrate Judge Moses issued her report and recommendation on damages to Judge Oetken. (R&R.) On March 24, 2020, Judge Oetken adopted the R&R. (Order Adopting R&R.)[8] Judgment in the amount of $284,785.01 was entered against Sklar on March 25, 2020.

A timeline of the relevant docket entries in the Debtor's bankruptcy cases and the District Court Action is below.[9] Docket entries in the Debtor's bankruptcy cases are noted in regular type, and docket entries in the District Court Action are in bold type.

| Docket Entry | Date |
| --- | --- |
| First Petition | August 29, 2017 |
| **District Court Complaint** | **November 16, 2017** |
| **Default Judgment Opinion** | **August 16, 2018** |

---

[8]    The Order Adopting R&R is dated one day after the Comprehensive Center Dismissal. A review of the docket in the District Court Action indicates that the Plaintiff's counsel filed a letter on the same day as the Comprehensive Center Dismissal requesting an update from the District Court and submitting a proposed order adopting the R&R. ("Letter," District Court Action ECF Doc. # 68.) The Letter did not indicate the reason for its timing, and the Court recognizes that the Letter is not necessarily a result of the Comprehensive Center Dismissal. However, the timing is curious.

[9]    A more extensive timeline including the filings and dates most relevant to both the Lift-Stay Motion and the Adversary Proceeding is included as an appendix to this opinion.

| Liability Order | **August 22, 2018** |
|---|---|
| Dismissal Order | October 31, 2018 |
| Second Petition | May 29, 2019 |
| **R&R** | **November 21, 2019** |
| **Order Adopting R&R** | **March 24, 2020** |

### B. The Adversary Proceeding

The Plaintiff commenced the Adversary Proceeding on November 13, 2020.  ("AP Complaint," AP ECF Doc. # 1.)  The Adversary Proceeding asserts that denial of discharge is warranted under five sections of the Code: sections 523(a)(6), 523(a)(11), 523(a)(19)(B)(i)–(iii), 1328(f), and 727(a)(4)(A).[10]

As noted above, the Debtor's current bankruptcy case was converted from one under chapter 11 to one under chapter 7 on August 27, 2019.  (Order Converting Case.)  After conversion, the first date set for the meeting of creditors under section 341(a) was October 16, 2019.  ("341 Notice," Main Case ECF Doc. # 38.)  As explained below, the last day to file a complaint objecting to the Debtor's discharge under both sections 523(a)(6) and 727(a)(4)(A) was December 16, 2019.  Two extensions of time to object to the Debtor's discharge were granted to the Chapter 7 Trustee and the U.S. Trustee, first through February 14, 2020, and then through April 15, 2020.  (Main Case ECF Doc. ## 46, 60.)

On April 13, 2020, the Chapter 7 Trustee filed an adversary proceeding against the Debtor.  ("Trustee AP," Adv. Proc. 20-01073.)  The Trustee AP sought denial of discharge due

---

[10]    The Plaintiff also filed a motion objecting to discharge in the Main Case, pursuant to all of the same sections except section 727(a)(4)(A).  ("Motion Objecting to Discharge," Main Case ECF Doc. # 81.)

to the Debtor's nondisclosure of several investment accounts.  (Trustee AP ECF Doc. # 1.)  The

Trustee's adversary proceeding was resolved by a stipulation so-ordered by the Court on January

19, 2021.  (Trustee AP ECF Doc. # 25.)

       The AP Complaint alleges that "Plaintiff was granted <u>no</u> notice of Defendant's

bankruptcy proceedings whatsoever," and that "Defendant failed to properly notify Defendant

[*sic*] of his underlying bankruptcy proceedings."  (AP Complaint ¶¶ 16–17 (underlining in

original).)  The Debtor's Statement of Financial Affairs and first Amended Statement of

Financial Affairs did not disclose the District Court Action or list Garcia as a creditor.  (Main

Case ECF Doc. ## 25, 51.)  After the Adversary Proceeding was filed, the Debtor filed a second

Amended Statement of Financial Affairs on November 25, 2020, disclosing the District Court

Action.  ("Second Amended SOFA," Main Case ECF Doc. # 86 at 19.)

### C.  Current Status

       At a hearing on December 8, 2020 (the "December Hearing"), the Court expressed its

view that the District Court Action is void *ab initio* because the District Court Complaint was

filed during the pendency of the First Bankruptcy Case.  The Court also noted the practical issues

with recovery even if the Court lifts the stay to allow the Plaintiff to restart the District Court

Action; the Court directed the parties to meet and confer to attempt to reach a settlement.  The

Court reiterated these points at the hearing held on January 7, 2021 (the "January Hearing").

Counsel to both Garcia and Sklar agreed to try to reach a settlement.  On February 11, 2021, the

Court held a hearing (the "February Hearing"); counsel said that attempts to reach a settlement

had been unsuccessful.  At the February Hearing, the Court gave the parties the option, if they

wished, to file briefs prior to the next conference addressing (1) the timeliness of a denial of

discharge adversary complaint since the case was originally filed as chapter 11 case and then

converted to a case under chapter 7, and (2) the deadline for filing an adversary complaint

objecting to discharge in a case in which the creditor was not given notice of the filing of the bankruptcy case.

On March 4, 2021, the Defendant filed a brief addressing the timeliness issues. (Defendant's Brief.)  On March 31, 2021, the Plaintiff filed a brief arguing, for the first time, that the stay should be lifted retroactively.  (Plaintiff's Brief.)  The Plaintiff's Brief does not address any of the issues of timeliness or notice on which the Court requested briefing.  On April 5, 2021, the Defendant filed a supplemental brief stating that he does not consent to adjudication of the Plaintiff's claim in the bankruptcy court.  (Defendant's Supplemental Brief.)

As discussed further below, <u>when</u> Garcia or her counsel learned of Sklar's bankruptcy filing is crucial in determining whether Garcia's claim can be excepted from discharge.  At the February Hearing, the Plaintiff's counsel represented that he learned of the Defendant's Second Bankruptcy Case from the Plaintiff around mid-November 2020 (when the Adversary Proceeding was filed), but he could not recall when Garcia learned of Sklar's bankruptcy.  The Defendant argues that the Plaintiff's allegation that the Defendant was served through his counsel of record in his bankruptcy case "demonstrate[s] that the Plaintiff had full knowledge that the Defendant had filed for bankruptcy, if not from the day bankruptcy was filed, at least at the point where the civil court awarded damages on the 24th of March, 2020 or soon thereafter." (Defendant's Brief ¶¶ 2.4–2.6.)

The Court held another conference on April 12, 2021 (the "April Conference"), during which counsel again indicated that settlement discussions had been unsuccessful.  At the April Conference, the Court said it expected to grant relief from the stay to allow the Plaintiff to restart her lawsuit against the Debtor.  This opinion explains the Court's reasoning.

### III.    <u>LEGAL STANDARD</u>

#### A.  The Automatic Stay

Section 362(a)(1) provides, in relevant part:

> (a) the filing of a petition under section 301 . . . of this title operates as a stay, applicable to all entities, of
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

In the Second Circuit, actions commenced or continued in violation of the stay are void *ab initio*. *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 F. App'x 15, 18 (2d Cir. 2011); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) ("The stay is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect."). "The action is void even where the acting party had no actual notice of the stay." *Hearst Magazines v. Stephen L. Geller, Inc.*, No. 08 Civ. 11312 (LLS), 2009 WL 812039, at *1 (S.D.N.Y. Mar. 24, 2009).

For an individual debtor, the stay of a judicial proceeding, unless lifted by the Court, continues until the earliest of the time the case is closed, dismissed, or a discharge is granted or denied. *See* 11 U.S.C. § 362(c)(2). The termination of the stay does not operate retroactively. *See E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 172 (2d Cir. 1998) (noting that "[a]n order 'terminating' an automatic stay operates only from the date of entry of the order," as opposed to retroactively); *see also Hamm v. R.H. Macy & Co.*, No. 93 Civ. 1446 (LAP), 1994

13

WL 507717, at *2 n.1 (S.D.N.Y. Sept. 13, 1994) (noting that the appropriate action for cases filed prepetition is to place them on the suspense docket, while "[i]n situations where the complaint was filed after bankruptcy, . . . dismissal is appropriate because the filing of the complaint itself was void").

### B. Relief from the Stay

"[A] party in interest" may request the Court to lift the stay pursuant to section 362(d). 11 U.S.C. § 362(d).  Where the stay of a judicial proceeding is concerned, "only Section 362(d)(1) is applicable."  *In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  That subsection provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

In *Sonnax*, the Second Circuit identified several factors to be considered in deciding whether cause exists to lift the automatic stay to allow litigation to proceed in another forum (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11)

whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  "Not all of the *Sonnax* Factors are relevant in every case, and 'cause'

is a broad and flexible concept that must be determined on a case-by-case basis."  *In re*

*Residential Cap., LLC*, 508 B.R. 838, 848 (Bankr. S.D.N.Y. 2014).

"The burden of proof on a motion to lift or modify the automatic stay is a shifting one."

*Sonnax*, 907 F.2d at 1285.  As the *Sonnax* court explained:

> Section 362(d)(1) requires an initial showing of cause by the
> movant, while Section 362(g) places the burden of proof on the
> debtor for all issues other than "the debtor's equity in property."  If
> the movant fails to make an initial showing of cause, however, the
> court should deny relief without requiring any showing from the
> debtor that it is entitled to continued protection.

*Id.*

### C. Retroactive Relief from the Stay

As stated above, the Second Circuit has held that actions commenced or continued in

violation of the stay are void *ab initio*, even where the violating party had no notice of the stay.

However, the Second Circuit has noted the various powers of the bankruptcy court to grant relief

from the stay pursuant to section 362(d), including "terminating, annulling, modifying, or

conditioning" the stay, and concluded that "[t]hese measures have different operation and

effect":

> An order "terminating" an automatic stay operates only from the
> date of entry of the order.  Such an order thus permits a creditor to
> re-initiate its lawsuit (or start another one) after the termination
> order is entered but does not affect the status of actions taken
> between the filing of the bankruptcy petition and the entry of the
> termination order—such actions are void *ab initio*.  By contrast, an
> order "annulling" a stay does have retroactive effect, and thereby
> reaches back in time to validate proceedings or actions that would
> otherwise be deemed void *ab initio*.

*E. Refractories Co.*, 157 F.3d at 172.

15

While some courts find that "actions taken in violation of the stay are voidable, not void, permitting an action to take effect if it is not objected to," this approach is questionable, as "the debtor would have the obligation to avoid acts taken in violation. In view of the importance of the stay, it is preferable to treat any such acts as void and of no effect, subject to being given effect by annulment or modification of the stay."  3 COLLIER ON BANKRUPTCY ¶ 362.12[1] (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997), and *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir. 1992)).  In *Soares*, the First Circuit explained that

> [t]reating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor.  In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor.

*Soares*, 107 F.3d at 976.  The court concluded that "the former paradigm, rather than the latter, best harmonizes with the nature of the automatic stay and the important purposes that it serves." *Id.*

In this Circuit, factors used to analyze a request for retroactive relief were originally set forth in *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001) (the "*Stockwell* Factors"):

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*Chimera Cap., L.P. v. Nisselson (In re MarketXT)*, 428 B.R. 579, 587 (S.D.N.Y. 2010) ("*MarketXT*") (quoting *Stockwell*, 262 B.R. at 281).  The fifth *Stockwell* Factor requires

evaluation of the *Sonnax* Factors. *In re WorldCom, Inc.*, 325 B.R. 511, 522 (Bankr. S.D.N.Y. 2005).

As with usual motions to lift or modify the stay, the party moving for retroactive relief has the burden to make a *prima facie* showing of cause. *Id.* at 521. Finally, "a request for retroactive relief from the automatic stay should be granted sparingly." *MarketXT*, 428 B.R. at 585. "If retroactive relief becomes commonplace, creditors—anticipating *post facto* validation—will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated." *Soares*, 107 F.3d at 977. Accordingly, "retroactive relief should be the long-odds exception, not the general rule." *Id.*

## IV.    **DISCUSSION**

### A.  The Effect of the Stay on the District Court Action

It is first necessary to determine which part or parts of the District Court Action have occurred in violation of the stay. The Plaintiff originally argued that the Court should lift the automatic stay only in order for the Plaintiff to request the reissuance of the R&R, as well as the Order Adopting R&R, thus implying that these were the only events that violated the automatic stay. (*See* Lift-Stay Motion ¶¶ 18–19.) However, the District Court Complaint was filed during the First Bankruptcy Case, and all events giving rise to the District Court Complaint took place before the First Petition Date. (*See* District Court Complaint ¶¶ 14–36.) Therefore, the District Court Action was very clearly "a judicial . . . action or proceeding against the debtor that . . . could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).[11]

---

[11]    The Plaintiff did not file a motion for relief from the stay in the First Bankruptcy Case.

"[W]hen necessary, a court is obliged to raise the issue of the application of the automatic stay *sua sponte*." *In re Heating Oil Partners*, No. 3:08-CV-1976 (CSH), 2009 WL 5110838, at *6 (D. Conn. Dec. 17, 2009). Accordingly, although no party had raised the issue before the first hearing on the Lift-Stay Motion, the Court is obligated to recognize that, *as against the Debtor*, not only were the R&R and the Order Adopting R&R issued in violation of the stay, but the entire District Court Action is void *ab initio*.[12]

The Court emphasizes that the District Court Action remains valid in its entirety as against the other non-debtor Defendants.[13]

### B. Retroactive Relief from the Stay

As the filing of the District Court Action was void *ab initio*, there is effectively no case against the Debtor pending in the District Court. Were the Court to grant relief from the stay only prospectively, the Plaintiff would need to file a new complaint against the Debtor and restart the action from the beginning. *See Hamm v. R.H. Macy & Co.*, 1994 WL 507717, at *2 n.1 ("In situations where the complaint was filed after bankruptcy, . . . dismissal is appropriate because the filing of the complaint itself was void.").

As indicated above, the Plaintiff now requests that the Court retroactively lift the stay to validate the earlier judgment, apparently missing the point that not only the judgment, but *the entire District Court Action*, was void against the Debtor; therefore, the entire District Court Action would need to be retroactively validated for the judgment against the Debtor to stand.

---

[12]    Termination of the stay upon dismissal of the First Bankruptcy Case only operated prospectively and did not operate retroactively to validate the District Court Action. *See E. Refractories Co.*, 157 F.3d at 172; *see also Hamm v. R.H. Macy & Co.*, 1994 WL 507717, at *2 n.1. In addition, while the stay is limited for repeat filers under section 362(c)(3), the limitation is inapplicable to the District Court Action, as it is not an "action taken with respect to a debt or property securing such debt or with respect to any lease." 11 U.S.C. § 362(c)(3).

[13]    The Court reaches no conclusion with respect to the enforceability of the judgment against Comprehensive Center LLC, a debtor in a separate chapter 11 case, since dismissed. Some actions of the District Court against that defendant were taken when its chapter 11 case was pending.

(*See* Plaintiff's Brief at 5–7.)[14]  The Court nevertheless proceeds to analyze whether retroactive

relief to validate the entire District Court Action would be appropriate in this case, as the relief

that the Plaintiff seemingly requests would be futile.

Retroactive relief to validate the District Court Action may at first glance seem warranted

where the Debtor has already shown an apparent unwillingness to defend the action.  However,

while the Debtor was served in the District Court Action, he was under no affirmative obligation

to respond to an action that was void against him, even if the Plaintiff had no notice of the

bankruptcy filing.  Retroactive relief would impose this obligation on the Debtor *ex post facto*.

*See, e.g.*, *Hearst Magazines*, 2009 WL 812039, at *1 (noting that an action filed in violation of

the stay "is void even where the acting party had no actual notice of the stay"); *Schwartz*, 954

F.2d at 571–72 ("Nothing in the Code or the legislative history suggests that Congress intended

to burden a bankruptcy debtor with an obligation to fight off unlawful claims. . . .  The

Bankruptcy Code does not burden the debtor with a duty to take additional steps to secure the

benefit of the automatic stay.").

Just as a debtor's nonresponse to a creditor's demand for payment issued in violation of

the stay does not retroactively validate the demand for payment, a debtor's nonresponse to a

plaintiff's action in another court in violation of the stay should not retroactively validate the

action.  A debtor should be permitted to assume that the automatic stay performs its function

*automatically*, without any additional action on his or her part.  *See Schwartz*, 954 F.2d at 571–

72.  Furthermore, a default judgment should not be retroactively validated because a debtor did

not respond, when his or her reliance on the automatic stay may have been the very reason for

---

[14]     This misunderstanding of the law was confirmed at the April Conference, despite the Court previously noting at multiple prior hearings and conferences that the District Court Action is void *ab initio* against the Debtor, and the entire action against the Debtor would need to be restarted.

nonresponse.  *See Soares*, 107 F.3d at 977 ("If retroactive relief becomes commonplace,

creditors—anticipating *post facto* validation—will be tempted to pursue claims against bankrupts

heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition

default judgments routinely may be resuscitated.").

It may seem that retroactive relief would save time and resources over the alternative.

However, if the Debtor fails to defend again, it will hardly be a significant drain of judicial

resources to wait the proper period of time after the refiling of the complaint and to reissue

substantially the same report and recommendations, opinions, and orders.  The minimal drain on

judicial resources is a small price to pay to preserve the Debtor's right to defend the action—

even if he chooses not to exercise it—and to preserve the authority of the automatic stay.

As noted above, the *Stockwell* Factors are used in this Circuit to analyze a request for

retroactive relief.  The relevant *Stockwell* Factors are analyzed below:

**(1) If the creditor had actual or constructive knowledge of the bankruptcy filing
and, therefore, of the stay.**  The Plaintiff represents that she had no knowledge of the

bankruptcy filing.  While this is an important factor in the Plaintiff's favor, it alone cannot be the

basis for retroactive relief.  That question may also be tested in further proceedings in this Court.

**(2) If the debtor has acted in bad faith.**  There is no indication that the Debtor acted in

bad faith in failing to respond to the District Court Action, as the action was void and he was

under no obligation to respond.  In addition, while the First Bankruptcy Case had been

dismissed, there was no finding that the case was filed in bad faith.  (*See* Dismissal Order.)

**(5) If grounds for relief from the stay existed and a motion, if filed, would likely
have been granted prior to the automatic stay violation.**  In considering this factor, it is

crucial to recognize that retroactive validation of the District Court Action requires retroactive

validation of the District Court Complaint as well as every subsequent act that had been taken in the District Court.

If the retroactive relief requested is to validate the filing of the District Court Complaint only, the Court should consider whether a motion requesting permission to *commence* the District Court Action would have been granted in the First Bankruptcy Case, which essentially had been abandoned by the Debtor.  (*See id.*)  For the same reasons the Court grants the motion to permit the filing of a new lawsuit against the Debtor, such a motion likely would have been granted.

By contrast, if a motion had only been filed to allow for one of the acts subsequent to the filing of the District Court Complaint to occur, such as to allow the District Court to *enter default judgment*, despite the stay having been in place until that point, the motion very likely would have been denied.  Lifting the stay to allow a default judgment to be entered because of the nonresponse of a debtor to a void complaint would be an extreme and likely impermissible result.

The granting of the hypothetical motion for relief from stay to file the District Court Complaint only would have had the effect of allowing the Plaintiff to file the District Court Complaint; it would not have guaranteed all of the subsequent acts that occurred in the District Court Action.  In addition, a hypothetical motion for relief from stay to allow for one of the subsequent acts would not have cured the problem that the District Court Complaint was filed in violation of the stay.  Therefore, this factor appears impossible to satisfy when considering retroactive validation of multiple events that occurred in violation of the stay and do not necessarily follow from each other.

Accordingly, the only reasonable retroactive relief that could be granted in this case, if it were otherwise warranted, would be to validate the filing of the District Court Complaint against the Debtor, but not the subsequent acts that had been taken in the District Court, and especially not the entry of default judgment.

**(6) If failure to grant retroactive relief would cause unnecessary expense to the creditor.**  While failure to grant retroactive relief would cause expense to the Plaintiff, that expense would only be unnecessary if it is assumed that the Debtor will not defend the action, which has not been shown at this point.  Again, it cannot be assumed that the Debtor would respond to a legitimate action in the same way as a void action.

**(7) If the creditor has detrimentally changed its position on the basis of the action taken.**  While the Plaintiff has arguably detrimentally relied on the Debtor's inaction, the Debtor's inaction was his right under the circumstances.  Moreover, it is not clear that the Plaintiff *changed* her position in response to the Debtor's inaction, as it does not appear that the Debtor took any *affirmative* action on which the Plaintiff detrimentally relied.  Weighing this factor against the Debtor due to his inaction would operate as a presumption, however slight, that a debtor is obligated to perform additional actions to obtain the full protection of the automatic stay, which is not the intention of section 362(a).  *See Schwartz*, 954 F.2d at 571–72.

Weighing the *Stockwell* Factors does not support lifting the stay retroactively.[15]  Accordingly, the Court **DENIES** the request for retroactive relief from the stay.

---

[15]    Perhaps the most crucial part of the analysis regarding retroactive relief is that the Court cannot *assume* that the Debtor would not have defended the action if it had been valid.  However, if the Debtor were to *affirmatively* state that he would not defend the District Court Action were it to be restarted, the calculus would be significantly altered, and retroactive relief may be warranted.

### C.  Relief from the Stay to Restart the District Court Action

As the District Court Action is void *ab initio* against the Debtor and retroactive relief is not warranted, the Plaintiff would need to file a new complaint and restart the entire action against the Debtor even if the Court lifts the stay.

The Plaintiff argues that she is entitled to relief from the stay as the Debtor "has showed [*sic*] failure to provide adequate protections [*sic*]."  (Lift-Stay Motion ¶ 17.)  However, where the movant seeks to proceed with litigation in another forum, the correct standard is stated in *Sonnax*.  *See* 907 F.2d at 1286.

Applying the *Sonnax* Factors relevant to this case, it is clear that relief from stay will permit the District Court to resolve Plaintiff's claims.  Garcia's claims against Sklar are commonplace for the District Court, and other creditors would not be prejudiced by the litigation.  The balance of harms clearly weighs in favor of lifting the stay to permit Garcia to litigate her claims against Sklar in the District Court; Sklar will not be prejudiced by having to defend a lawsuit during the bankruptcy case is pending; and the lawsuit would not interfere with this bankruptcy case generally, as the bankruptcy case has been pending for more than two years, with almost no activity in the past year other than the Trustee AP and the Garcia matter.  *See In re Larkham*, 31 B.R. 273, 277 (Bankr. D. Vt. 1983) ("In the instant proceeding, granting plaintiff relief from the automatic stay will not necessarily or immediately have an impact on the bankruptcy estate: there is in this case no attempt by the plaintiff to deprive the debtor of assets. Rather, relief from the stay will permit discovery and a judgment on plaintiff's employment discrimination claims.").  In a case such as this, the Plaintiff should not be delayed further in pursuing her claims.

Accordingly, the Court **GRANTS** relief from the stay to allow the Plaintiff to restart her lawsuit in the District Court against the Debtor.

### D. Exceptions to and Denial of Discharge

The Plaintiff argues that her claims are non-dischargeable under section 523(a)(6), and that the Debtor should be denied a discharge of all of his debts under section 727(a)(4)(A).[16]  A pending adversary proceeding to deny a discharge weighs in favor of lifting the stay when the determination whether the debtor should be denied a discharge depends on adjudicating the underlying claims in another judicial proceeding.  *See, e.g.*, *Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 757 (Bankr. S.D.N.Y. 2014) (finding that stay relief to permit another judicial action to proceed is appropriate where "dischargeability issues are not ripe for determination until Plaintiff's personal injury tort claims have been liquidated by a court of competent jurisdiction"); *Goldschmidt v. Erickson (In re Erickson)*, 330 B.R. 346, 350 (Bankr. D. Conn. 2005); *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413–16 (Bankr. S.D.N.Y. 2001).  When such an adversary proceeding is one of the only remaining issues in the bankruptcy case, stay relief may especially be warranted, as the case cannot be closed until the adversary proceeding is resolved.  *See* 11 U.S.C. § 350(a) ("After an estate is fully administered and the court has discharged the trustee, the court shall close the case."); *In re Lupatech S.A.*, 611 B.R. 496, 503 (Bankr. S.D.N.Y. 2020) ("'Fully administered' means, at a minimum, that administrative claims have been provided for, and there are no outstanding motions, contested matters or *adversary proceedings*." (emphasis added)).

However, as explained below, the time to file a complaint seeking to deny a discharge under sections 523(a)(6) and 727(a)(4)(A) has already expired.  Nevertheless, section 523(a)(3) preserves the Plaintiff's rights and renders her claim non-dischargeable *if* the Plaintiff did not

---

[16]    The Debtor also asserts claims under sections 523(a)(11), 523(a)(19)(B)(i)–(iii), and 1328(f), but these sections are inapplicable to this case, as explained below.

have notice or actual knowledge of the Second Bankruptcy Case until after the December 6,

2019 bar date expired.  Therefore, dischargeability of the Plaintiff's claim depends entirely on a

determination of <u>when</u> the Plaintiff had notice or actual knowledge of the Second Bankruptcy

Case; the character of the underlying claim (*i.e.*, whether it fits within section 523(a)(6)) is no

longer relevant.  The issue whether section 523(a)(3) excepts Garcia's claims from discharge, if

she recovers in the District Court, can be resolved without waiting for the District Court to

resolve Garcia's non-bankruptcy claims.  Without waiting for the District Court to rule, this

Court can determine whether and when the Plaintiff had notice or actual knowledge of the

Second Bankruptcy Case.[17]

     1.  <u>Applicable Grounds for Objecting to Discharge</u>

As noted above, the AP Complaint asserts that denial of discharge is warranted under five

sections of the Code: sections 523(a)(6), 523(a)(11), 523(a)(19)(B)(i)–(iii), 1328(f), and

727(a)(4)(A).  (AP Complaint at 4–5.)

Sections 523(a)(11), 523(a)(19)(B)(i)–(iii), and 1328(f) are inapplicable to this case:

- "The conduct that renders a debt nondischargeable under section 523(a)(11) is

  'fraud or defalcation while acting in a fiduciary capacity.'"  4 COLLIER ON

  BANKRUPTCY ¶ 523.17.  Such conduct is not alleged here.

---

[17]    Of course, if the Plaintiff loses the refiled lawsuit, the Plaintiff would be owed nothing and the Court would not need to decide the issue of dischargeability.  However, it will likely take much longer to resolve a newly filed complaint in the District Court raising all of the claims Garcia included in her original complaint than it will for this Court to decide the issues under section 523(a)(3).  If Sklar prevails in proving that Garcia had notice or actual knowledge of Sklar's Second Bankruptcy Case, Garcia's denial of discharge Adversary Proceeding is untimely, and Garcia's claims are discharged.  It would then be unnecessary for the District Court to adjudicate that lawsuit.  It would be more efficient to resolve the Adversary Proceeding now, rather than wait to see if the issue of dischargeability needs to be resolved after the district court action is concluded.

- Section 523(a)(19) explicitly requires both subsections (A) and (B) to be met, and subparagraph (A) makes clear that section 523(a)(19) applies to debts arising from securities fraud.  The District Court Action does not involve securities fraud.

- Section 1328(f) applies in chapter 13 cases, not in chapter 7 cases.

Accordingly, the Plaintiff's claims under sections 523(a)(6) and 727(a)(4)(A) are the only ones asserted that may actually be viable.  However, as explained below, these claims are untimely.

2.   <u>Time Limitations and Dischargeability</u>

a.   *Exceptions to Discharge Under Section 523*

Exceptions to discharge are listed in section 523.  As explained by the district court in *Hawker Beechcraft*:

> [U]nder the Bankruptcy Code there are generally two types of exceptions to discharge: (1) those that are self-executing and (2) those that require the creditor to seek a determination of dischargeability in the bankruptcy court by a fixed deadline, failing which the exception does not apply and the debt is discharged.  The difference between the two categories is the allocation of the burden of persuasion regarding the dischargeability of a certain debt.  If an exception is self-executing, a creditor or debtor may seek a determination of dischargeability at any time pursuant to Fed. R. Bankr. P. 4007(b), and absent a determination that the debt is dischargeable the creditor may take steps to collect the debt from non-estate property upon termination of the automatic stay.
>
> In contrast, exceptions in the non-self-executing category require a creditor to affirmatively seek a determination of exception to the discharge before a specified deadline.  If a creditor fails to seek that determination before the deadline and prevail in the proceeding, the debtor is discharged from the claimed debt . . . .  By operation of 11 U.S.C. § 523(c)(1), the non-self-executing category of discharge exceptions includes three exceptions applicable to an individual debtor's discharge, which are set forth in 11 U.S.C. § 523(a).  Section 523(c)(1) provides:
>
>> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified

26

> in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

> Thus, in order to qualify a claim for the discharge exception provided in section 523(a)(2), (4), or (6), a creditor in the bankruptcy case of an individual debtor is required to seek a determination of discharge in bankruptcy court by filing a complaint to commence an adversary proceeding. The applicable deadline is set forth in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

*United States ex rel. Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 515

B.R. 416, 422 (S.D.N.Y. 2014).

Accordingly, the exception to discharge under section 523(a)(6) requires timely filing of

a complaint as determined by Rule 4007(c). Rule 4007(c) states that such a complaint "shall be

filed no later than 60 days after the first date set for the meeting of creditors under §341(a)."

FED. R. BANKR. P. 4007(c). While the rule also provides that "[o]n motion of a party in interest,

. . . the court may for cause extend the time fixed under this subdivision," the rule requires that

"[t]he motion shall be filed before the time has expired." *Id.* If a motion requesting an extension

is not filed before the deadline,

> [a] court has no discretion to enlarge the time for filing complaints under section 4007(c), not even upon a showing of excusable neglect. Under Rule 4007(c), the creditor must either file the complaint within the time set or move for an enlargement of time before the deadline has passed. Bankruptcy Rule 9006(b)(3) expressly provides that the court "may enlarge the time for taking action under Rule[s] . . . 4007(c) . . . only to the extent and under the conditions stated in those rules."

4 COLLIER ON BANKRUPTCY ¶ 523.29[1].

By contrast, Rule 4007(b) provides that "[a] complaint other than under §523(c) may be

filed at any time." FED. R. BANKR. P. 4007(b). Therefore, a complaint seeking a determination

27

that a debt is non-dischargeable pursuant to section 523(a)(3), relating to unlisted or unscheduled debts, may be filed at any time.

### b. *Denial of Discharge Under Section 727*

Rule 4004(a) provides that, "[i]n a chapter 7 case, a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 4004(a).  Similar to Rule 4007(c), Rule 4004(b)(1) provides that "[o]n motion of a party in interest, . . . the court may for cause extend the time fixed under this subdivision," but "[t]he motion shall be filed before the time has expired." *Id.*

Rule 4004(b)(2) provides a narrow exception permitting a motion to extend the time to object to discharge to be filed after the time has expired, if the movant lacked timely knowledge of facts that would provide a basis for an objection under section 727(d).  Rule 4004(b)(2) provides:

> (2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection.  The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

FED. R. BANKR. P. 4004(b)(2).  Section 727(d) provides:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> >
> > (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

> (3) the debtor committed an act specified in subsection (a)(6) of this section;[18] or
>
> (4) the debtor has failed to explain satisfactorily—
>
>> (A) a material misstatement in an audit referred to in section 586(f) of title 28; or
>>
>> (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

11 U.S.C. § 727(d).

It seems that section 727(d)(1) is the only subsection that may arguably apply in this case.

As this Court explained in *In re Bressler*, 601 B.R. 318 (Bankr. S.D.N.Y. 2019):

> Courts have interpreted [section 727(d)(1)] to mean that a moving party had no actual knowledge of the fraud and also no knowledge of facts that indicate a *possible* fraud prior to discharge. . . .
>
> [I]t follows that . . . if a moving party before the objection deadline has no knowledge of possible fraud, no notice of possible failure to report or turnover estate property, or no notice of possible intentional disobedience of a court order, a court may grant an extension under Rule 4004(b)(2).

601 B.R. at 333 (emphasis in original).

---

18    The acts specified in subsection (a)(6) are as follows:

> (6) the debtor has refused, in the case—
>
>> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
>>
>> (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
>>
>> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify.

11 U.S.C. § 727(a)(6).

However, even if the Plaintiff had an objection that would satisfy the criteria in subparagraph (A) of Rule 4004(b)(2), and lacked knowledge of the relevant facts at the relevant time such that subparagraph (B) would be satisfied, the Plaintiff has not filed a motion to extend the time to object to discharge under Rule 4004(b)(2). Such a motion must "be filed promptly after the movant discovers the facts on which the objection is based," and the Plaintiff appears to have been aware of the facts that may have entitled her to an extension under Rule 4004(b)(2) at least since November 2020. Therefore, such a motion would likely be untimely at this point.

> ### c. Conclusion

Under both Rule 4007(c), which applies to the Plaintiff's claim under section 523(a)(6), and Rule 4004(a), which applies to the Plaintiff's claim under section 727(a)(4)(A), a creditor has 60 days from the first date set for the meeting of creditors to file a complaint objecting to discharge. A motion for an extension of time must be filed before the end of this 60-day period. In narrow circumstances, pursuant to Rule 4004(b)(2), a creditor may move after the 60-day period for an extension of time to object to discharge under section 727, but the Plaintiff has not filed such a motion, and such a motion would likely be untimely at this point. To the extent that the Plaintiff has a claim under section 523(a)(3), Rule 4007(b) provides that a complaint pursuant to that section may be filed at any time.

> ### 3. <u>Time Limitations for Dischargeability Complaints in a Converted Case</u>

Bankruptcy Rule 1019(2)(A) provides:

> When a chapter 11, chapter 12, or chapter 13 case has been converted . . . to a chapter 7 case:
>
> > (2) *New Filing Periods*.
> >
> > > (A) A new time period for filing a motion under §707(b) or (c), a claim, a complaint objecting to discharge, or a complaint to obtain a determination

> of dischargeability of any debt shall commence
> under Rules 1017, 3002, 4004, or 4007 . . . .

FED R. BANKR. P. 1019(2)(A); *see also Bell v. Bell (In re Bell)*, 225 F.3d 203 (2d Cir. 2000) ("On

conversion, the Bankruptcy Rules expressly provide that a new time period shall commence for

. . . the filing of a complaint objecting to discharge, pursuant to Fed. R. Bankr. P. 4004 . . . ."

(citing FED. R. BANKR. P. 1019(2))).

Rule 1019(2) adopts the holding of *F & M Marquette Nat'l Bank v. Richards*, 780 F.2d

24 (8th Cir. 1985).  9 COLLIER ON BANKRUPTCY ¶ 4007.04[1][b].  In *Richards*, the court

explained:

> Although the filing of a petition under chapter 11 is an order for
> relief, *see* 11 U.S.C. § 301, the conversion of a bankruptcy case from
> chapter 11 to chapter 7 also constitutes an order for relief.  11 U.S.C.
> § 348(a).  Furthermore, a meeting of creditors is required to be held
> within a reasonable time after an order for relief.  11 U.S.C. § 341(a).
> Thus, a new meeting of creditors is required upon conversion from
> chapter 11 to chapter 7.  *See* Bankruptcy Rule 1019(2).  This new
> meeting of creditors is not a continuation or extension of the meeting
> of creditors in the previous chapter 11 proceeding.  Rather, it is a
> separate and distinct meeting in which a new trustee must be
> selected.  *See* 11 U.S.C. § 348(e); Advisory Committee Note to Rule
> 1019(2).
>
> The time fixed for filing a complaint to determine dischargeability
> of a debt is keyed to the first date set for the meeting of creditors.
> Rule 4007(c).  Because the meeting of creditors that is required upon
> a conversion from chapter 11 to chapter 7 is unrelated to the meeting
> held in the previous chapter 11 proceeding, we conclude that the
> date fixed for the meeting is "the first date set for the meeting of
> creditors" within the context of Rule 4007(c).  Therefore, we hold
> that creditors receive a fresh sixty day period for filing their
> complaints.

780 F.2d at 25; *see also Kerzner v. Hirsch*, 2000 WL 60210, at *2–3 (S.D.N.Y. Jan. 24, 2000)

(citing *Richards*).

Here, the Second Bankruptcy Case was converted to chapter 7 on August 27, 2019.

(Order Converting Case.)  After conversion, the first date set for the meeting of creditors under

section 341(a) was October 16, 2019.  (341 Notice.)  Accordingly, the last day to file a complaint objecting to discharge under both sections 523(a)(6) and 727(a)(4)(A) was on December 16, 2019.[19]  The AP Complaint was filed well after this deadline, on November 13, 2020, and the claims under sections 523(a)(6) and 727(a)(4)(A) are therefore untimely.

      4.   <u>Lack of Notice or Actual Knowledge</u>

      *a.  Denial of Discharge for Certain Debts Under Section 523*

Despite the deadlines noted above, section 523(a)(3) protects an unlisted creditor without notice or actual knowledge of a bankruptcy case against the discharge of its debts.[20]  Section 523(a)(3) provides:

> (a) A discharge under section 727 . . . does not discharge an individual from any debt—
>
> > (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> >
> > > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> > >
> > > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

---

[19]     Sixty days after the first date set for the 341 meeting was December 15, 2019, which was a Sunday. Pursuant to Rule 9006(a)(1)(C), "if the last day [of a period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. BANKR. P. 9006(a)(1)(C).  Accordingly, the last day to file a complaint objecting to discharge under sections 523(a)(6) and 727(a)(4)(A) was December 16, 2019.

[20]     Neither party has addressed the applicability of section 523(a)(3).

11 U.S.C. § 523(a)(3).[21]

Section 523(a)(3) distinguishes between debts under section 523(a)(2), (4), and (6) and all other debts. However, both subparagraphs (A) and (B) indicate that, if an unlisted creditor did not have notice or actual knowledge of the bankruptcy case on or before the bar date, the debt owed to that creditor is not discharged. As a result, in most cases (including this case), the distinction in section 523(a)(3) between debts under section 523(a)(2), (4), and (6) and all other debts is immaterial. Therefore, in most cases, regardless whether the debt is of a kind specified in section 523(a)(2), (4), or (6), if the creditor did not have notice or actual knowledge of the case on or before the bar date, the debt owed to that creditor is not discharged.[22]

Here, after conversion to chapter 7, the bar date was December 6, 2019. ("Notice of Possible Dividends," Main Case ECF Doc. # 41.) If the Plaintiff had no notice or actual knowledge of the Second Bankruptcy Case until after December 6, 2019, the Plaintiff's claims would be non-dischargeable under section 523(a)(3), regardless of whether the debt is of a kind specified in section 523(a)(2), (4), or (6). Conversely, if the Plaintiff had notice or actual knowledge of the Second Bankruptcy Case on or before December 6, 2019, the Plaintiff's claim

---

[21] Application of section 523(a)(3) to find that a creditor's complaint regarding dischargeability is untimely does not violate due process where the creditor had actual knowledge but no formal notice of the bankruptcy case. *GAC Enters. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 457 (2d Cir. 1995).

[22] This may raise the question of why section 523(a)(3) draws a distinction between debts under section 523(a)(2), (4), or (6) and all other debts, and why it should not be simplified to only reference the bar date. However, the requirement that the unlisted creditor have notice or actual knowledge in time to permit timely filing of *both* a proof of claim *and* a request for a determination of dischargeability is crucial in no-asset chapter 7 cases, where there is no bar date. In such a case, if the unlisted creditor has no notice or actual knowledge of the case in time to permit a timely request for determination of dischargeability, and the debts are of a kind specified in section 523(a)(2), (4), or (6), section 523(a)(3)(B) provides that the debts owed to that creditor are not discharged. *See In re Cruz*, 254 B.R. 801, 805–10 (Bankr. S.D.N.Y. 2000).

There may also be cases in which the deadline to file a request for a determination of dischargeability occurs before the bar date, such as when assets are discovered in a case that begins as a no-asset case and a bar date must be set. In such a case, notice or actual knowledge of the case before the bar date would not necessarily mean that the unlisted creditor *also* had notice or actual knowledge in time to permit a timely request for a determination of dischargeability. However, here, the bar date was on December 6, 2019, which was before the deadline to request a determination of dischargeability on December 16, 2019.

would be dischargeable, regardless of whether the debt is of a kind specified in section 523(a)(2), (4), or (6).

Accordingly, it is not necessary to resolve the issue whether the debt potentially[23] owed to the Plaintiff is non-dischargeable under 523(a)(6), as the same result regarding dischargeability is reached whether or not the debt falls within section 523(a)(6).

At the February Hearing, the Plaintiff's counsel represented that he had learned of the Defendant's current bankruptcy case from the Plaintiff around mid-November (when the Adversary Proceeding was filed), but he could not recall when Garcia learned of Sklar's bankruptcy. Sklar argues that Garcia's allegation that Sklar was served through his counsel of record in his bankruptcy proceeding "demonstrate[s] that the Plaintiff had full knowledge that the Defendant had filed for bankruptcy, if not from the day bankruptcy was filed, at least at the point where the civil court awarded damages on the 24th of March, 2020 or soon thereafter." (Defendant's Brief ¶¶ 2.4–2.6.)

Sklar's argument is faulty for two reasons. First, Garcia does not indicate when Sklar was allegedly served through his bankruptcy counsel. Second, if Garcia only had knowledge of Sklar's bankruptcy on or after March 24, 2020, Garcia's claim would be non-dischargeable under section 523(a)(3), regardless of whether the debt is of a kind specified in section 523(a)(2), (4), or (6), as explained above.

---

[23] Of course, as the District Court Action is void *ab initio* against the Debtor, the Debtor does not actually owe any debt to the Plaintiff at the moment. In addition, if the Plaintiff loses the refiled lawsuit, there would be no debt owed to the Plaintiff in the first place. Both section 523 and section 727 refer to the discharge of "debts." Under the Bankruptcy Code, "[t]he term 'debt' means liability on a claim." 11 U.S.C. § 101(12). While the Plaintiff's claim is neither reduced to judgment nor liquidated, and is contingent and disputed, it is nevertheless a "claim" under the Bankruptcy Code. *See* 11 U.S.C. § 101(5). With respect to claims (*i.e.*, causes of action) that arose prepetition, the discharge of "debts" therefore relates to the *potential* liability on those claims. Otherwise, a plaintiff with a prepetition cause of action could easily avoid the effect of a debtor-defendant's discharge by waiting until after the discharge to file its lawsuit.

The determination of when Garcia received notice or gained knowledge of the Second Bankruptcy Case would resolve the issue of dischargeability—and therefore the entire Adversary Proceeding—without having to wait for adjudication of the underlying non-bankruptcy claims. Accordingly, the Court will move forward with the Adversary Proceeding.

### b. Denial of Discharge Generally Under Section 727

With respect to a total denial of discharge under section 727 (and the applicable rules regarding timeliness in Rule 4004), there does not appear to be a direct analogue to section 523(a)(3) (and the applicable rules regarding timeliness in Rule 4007) that allows for the filing of a complaint objecting to discharge under section 727 at any time where a creditor had no notice or actual knowledge of the bankruptcy case. This may be because section 523(a)(3) already sufficiently protects such a creditor's due process rights by allowing that creditor to seek denial of discharge with respect to the particular debts owed to that creditor.

As noted above, Rule 4004(b)(2) provides a narrow exception permitting a motion to extend the time to object to discharge to be filed after the time has expired where a Plaintiff lacked knowledge of certain facts in order to file a timely objection. However, the Plaintiff has not filed a motion to extend the time pursuant to Rule 4004(b)(2), which must "be filed promptly after the movant discovers the facts on which the objection is based." FED. R. BANKR. P. 4004(b)(2). As the Plaintiff appears to have been aware of the facts that may have entitled her to an extension under Rule 4004(b)(2) at least since November 2020, such a motion would likely be untimely at this point.

Even if a timeliness exception did exist for a claim under section 727(a)(4)(A) for a creditor who lacked notice or actual knowledge of a bankruptcy case—or if the Plaintiff had a claim under section 727(d) that entitled her to the exception under Rule 4004(b)(2) and her

motion to extend the time pursuant to that exception were timely—the determination whether

section 727(a)(4)(A) or section 727(d) were met would not depend on the outcome of the

underlying litigation (as it would with respect to a claim under section 523(a)(6)), and therefore

the claims would also have no bearing on the consideration of lifting the stay to allow the lawsuit

to be refiled.

### 5.    Leave to Amend

Although the Plaintiff's arguments to deny Sklar a discharge fail under the sections cited

in the AP Complaint, either due to inapplicability or untimeliness, the facts pled arguably

demonstrate that the Plaintiff is entitled to relief under section 523(a)(3).  While Garcia has not

cited this section, citation to the specific code section that entitles a plaintiff to relief is not

required under federal pleading standards.  *See Johnson v. City of Shelby*, 574 U.S. 10 (2014).

Nevertheless, the Court **GRANTS** the Plaintiff leave to amend the AP Complaint within 21 days

to reference section 523(a)(3).  *See id.* at 12 ("For clarification and to ward off further insistence

on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an

opportunity to add to their complaint a citation to §1983.").[24]

### 6.    The Motion Objecting to Discharge

In addition to the Adversary Proceeding, the Plaintiff also filed the Motion Objecting to

Discharge in the Main Case, pursuant to all of the same sections in the AP Complaint except

section 727(a)(4)(A).  (Motion Objecting to Discharge.)  Rule 4004(d) provides that "[a]n

objection to discharge is governed by Part VII of these rules, except that an objection to

discharge under §§727(a)(8), (a)(9), or 1328(f) is commenced by motion and governed by Rule

---

[24]    While the Defendant has neither answered nor formally moved to dismiss the AP Complaint, the
Defendant's Brief, filed on March 4, 2021, could be construed as a motion to dismiss.  If so, the Plaintiff's time to
amend "as a matter of course" under Fed. R. Civ. P. 15 (made applicable here by Rule 7015) expired on March 25,
2021.  *See* FED. R. CIV. P. 15(a)(1)(B).

9014." Fed. R. Bankr. P. 4004(d). Therefore, "[t]he only exception to th[e] general requirement" that objections to discharge are to be brought as adversary proceedings "is for motions under section 727(a)(8) or (a)(9) or section 1328(f)." 9 Collier on Bankruptcy ¶ 4004.05.

The only one of the Plaintiff's objections to discharge that could be asserted in a motion rather than an adversary proceeding is the one under section 1328(f). However, section 1328(f) applies in chapter 13 cases, not in chapter 7 cases. Accordingly, the Court **DENIES** the Motion Objecting to Discharge as improperly filed.

### E. Consent to Adjudication in the Bankruptcy Court

The Court raised the issue of the applicability of 28 U.S.C. § 157(b)(5) and the potential for the lawsuit to be heard in the bankruptcy court under *Stern v. Marshall*, 564 U.S. 462, 478–80 (2011) and *Wellness International Network v. Sharif*, 575 U.S. 665 (2015).

Section 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5). In order for the bankruptcy court to adjudicate such claims, there must be consent "of all parties to the proceeding." 28 U.S.C. § 157(c)(2); *Wellness*, 575 U.S. at 683–84.

The District Court Complaint asserts claims against the Defendant for sexual harassment, assault and battery, and gender-motivated violence, to which section 157(b)(5) applies. *See Stranz v. Ice Cream Liquidation (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 160–64 (Bankr. D. Conn. 2002). Sklar declined to consent to the bankruptcy court adjudicating Garcia's claims. (Defendant's Supplemental Brief.) Garcia has not expressly indicated whether or not she consents to adjudication in the bankruptcy court. As the consent "of all parties to the

37

proceeding" must be given for the claims to be adjudicated in the bankruptcy court, and neither

party has consented (and one has expressly refused), the claims must be adjudicated by the

District Court rather than the bankruptcy court.

## V.    CONCLUSION

With respect to the Lift-Stay Motion, the Court **DENIES** retroactive relief from the stay,

but **GRANTS** prospective relief from the stay to allow the Plaintiff to file a new lawsuit against

the Debtor in the District Court.

With respect to the Adversary Proceeding, the Court **GRANTS** the Plaintiff leave to

amend the complaint within 21 days of the filing of this opinion to assert a claim under section

523(a)(3).  Plaintiff's claims to deny a discharge under sections 523(a)(11), 523(a)(19)(B)(i)–

(iii), and 1328(f) are **DISMISSED** as inapplicable to this case.  Plaintiff's claims to deny a

discharge under sections 523(a)(6) and 727(a)(4)(A) are **DISMISSED** as untimely.  As the

Adversary Proceeding can be resolved entirely by determining whether the Plaintiff had notice or

actual knowledge of the Second Bankruptcy Case on or before the bar date of December 6, 2019,

without waiting for resolution of a new lawsuit in the District Court against the Debtor, the Court

**ALLOWS** the Adversary Proceeding to continue to resolve that issue.

Finally, the Court **DENIES** the Motion Objecting to Discharge as improperly filed.

Dated:    April 20, 2021
          New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge

# APPENDIX: TIMELINE

Events from the First and Second Bankruptcy Cases are in regular type.

Events from the District Court Action are in bold type.

| Event | Date |
|---|---|
| First Petition | August 29, 2017 |
| **District Court Complaint** | **November 16, 2017** |
| **Default Judgment Opinion** | **August 16, 2018** |
| **Liability Order** | **August 22, 2018** |
| Dismissal Order | October 31, 2018 |
| Second Petition | May 29, 2019 |
| Order Converting Case | August 27, 2019 |
| First Date Set for 341 Meeting | October 16, 2019 |
| **R&R** | **November 21, 2019** |
| Bar Date | December 6, 2019 |
| Deadline for Discharge Complaint | December 16, 2019 |
| **Order Adopting R&R** | **March 24, 2020** |
| Motion Objecting to Discharge | November 6, 2020 |
| AP Complaint | November 13, 2020 |
| Lift-Stay Motion | November 23, 2020 |
| Second Amended SOFA | November 25, 2020 |